Thank you. May it please the court, Bo Sterling on behalf of the appellant, Leonard Jackson. This case involves an ATF-initiated reverse sting operation involving an entirely fictional drug stash house containing, supposedly containing some 70 to 100 pounds of pure cocaine. Is Las Vegas the city of illusion? Yes, Your Honor. This is an unusual case. At least the sentencing entrapment defense argument, or sentencing entrapment argument is unusual. And I say it's unusual because that's the way that this Court referred to this kind of a scenario in its decision last September in USA v. Briggs. This is an opinion that's discussed in our opening brief, although it's not addressed by the government in their answer for some reason. But in that case, this Court noted that this kind of reverse sting operation where the in-government creates the entire drug buy scenario or robbery scenario is unusual in that it's different from the typical, or what we might call the typical, sentencing enhancement case where the argument is that the government refused to go through with the drug buy or whatever it might be unless the defendant agreed to a higher amount than he would otherwise have been predisposed to do. So it's unusual in that it's different from that kind of case. Now in Briggs, the Court ultimately decided the case on a procedural issue rather than getting to the sentencing enhancement issue on its own, which I think is something that we should pay attention to in this case. And that's that in these kind of circumstances, the government is entirely in control of all of the sentencing factors, or all of the conditions that would go into the sentencing factors when they set up these reverse sting operations. And under those kind of circumstances, this Court said that it's inclined to take a hard look to ensure that the proposed dash house robbery is within the scope of the defendant's ambition and means. Now in this case, we argued, or the trial counsel argued, for a downward departure based on what we might call, or has been called, an imperfect sentencing entrapment defense. The district court judge did not It appears that the Court was not looking at this as the kind of unusual case, but was looking at it simply within the lens of a traditional sentencing entrapment kind of case. Now in fairness to the judge, the sentencing hearing was I think in the spring of 2010, and this decision didn't come out until in particular, if you look at pages 19, beginning at line 18, and also have you look at page 26, beginning at page 11, but essentially the statements from the judge are the same in both these parts. You see that the judge is characterizing the sentencing entrapment argument for himself, and he's saying, I'm familiar with this kind of case where the defendant was inclined to do a lesser quantity, and the government said that they wouldn't deal with him unless it was a bigger quantity. So that's more of the typical kind of sentencing entrapment case. So what entrapment do you have here? I understand what the typical case is, and if you're saying that this is an atypical case, what is your client being entrapped to do? Well, again, it's probably inaccurate to maybe refer to it as entrapment, because obviously, although we're not conceding this, this doesn't fit into what we normally think of as entrapment, which is where there's So if it's not entrapment, what is it? It's the unfair manipulation of the scenario, the fictional scenario, in such a manner as to unfairly maximize the sentence. Okay, how did the government maximize the sentence? By establishing a very large quantity of drugs as part of the fictional scenario. And obviously, this is a concept that this court is working through, as it did and has started to in Briggs, although this idea of sentencing manipulation goes back to earlier cases as far back as 1994. So apart from the claim, counsel, apart from the claim that your client should have a full defense, on sentencing, what do you have to do? What you'd like us to do, as I understood it, would be to vacate the sentence and remand for reassessment in the light of Briggs. I mean, I guess maybe you'd like us also to say the sentence is just substantively unreasonable, but I'm not sure how we get a handle on that when it's in the guidelines. So is your primary argument that Briggs tries to make an effort to get into this type of scenario, which we haven't coined a phrase for? It's not really entrapment, it's something else that we should send back to the district court to look at Briggs. That's absolutely right, your honor. We are asking for remand, have the district court reconsider this in light of Briggs. In Briggs, this court said it would take a hard look, but what we really want is for the district court judge to take a hard look at this scenario, recognizing that this may be a grounds for a downward departure. We've certainly made the other arguments about substantive unreasonableness, but the court did apply the sentencing factors, and those are discretionary considerations. So I'm acknowledging that those are weaker arguments. What I think I would really ask the court to do is here is the remand, as you suggested. Counsel, you said that the government manipulated the situation and maximized the sentence because of the large quantity of drugs. So did your client get a sentence based on the drugs that he thought were in the stash house? Yeah, that's absolutely right, your honor. If you look at the PSR, you see that I think the base offense level was 30. Well, basically, yes, the drug, the sentencing guidelines factors were based on the quantity of drugs. And if you look at the sentencing guidelines, you can see that essentially based on whether you have a very minimal amount of drugs or an amount up to what was found in this case, the sentence can range by as much as ten years, and here we're looking at a 17 year sentence. So that's where the range for the manipulation comes in, that's a ten year swing. Okay, you have a couple minutes left, do you want to reserve? I'll reserve. Good afternoon, may it please the court. I'm Elizabeth Olsen on behalf of the United States. First, to just directly address what this court said in Briggs. What the court said in Briggs is that they looked at this fictional stash house scenario, which is something that ATF has been doing around the country for about 25 years. And they say that, yes, the government gets to pick the scenario. They get to pick the amount of drugs, they get to pick how risky it is, because they're making it up. I mean, they actually make up that scenario. And so, and what the panel said is, because of that, we are inclined to take a hard look to ensure that the proposed stash house robbery was within the scope of the defendant's ambition and means. You know, that this was within his predisposition. And then, at the end of the next paragraph, they drop a footnote and say, although we don't have to decide it in this particular case, the burden of establishing that the drug quantity involved in the scope of this, in this case, were not within the scope of the defendant's ambitions or means, appears to have been on the defendant, right? So even as they're recognizing this new, you know, the defendant in Briggs had made, had called his challenge a sentencing entrapment challenge. And the panel in Briggs, you know, used the term sentencing entrapment. But they said this isn't like a normal sentencing entrapment. I mean, the sentencing entrapment that this court has recognized, which some other circuits haven't, but this circuit has, is, applies in a very specific situation where you have what is usually, you know, two-bit, low-level drug dealer who generally deals in small quantities. And the government, with persistent persuasion and sometimes offering a tremendous price or a tremendous deal, persuades or encourages the defendant to participate in a crime that is much larger than he would normally be comfortable doing, okay? Right. So we take Briggs, and that was, that happened, of course, after the sentencing in this case. And then you go back to Naranjo, which requires findings. Yeah. And looking at this, the transcript, there's, it's pretty sparse. Well, if you look at page 26, the court says, you know, normally the court says that, you know, these sentencing entrapment cases of which the court was familiar and which was at play in this decision where this court said the judge has to make explicit findings, he says these entrapment cases involve the government insisting on an amount that they're going to be dealing with that is more than what the defendant wanted to do. We don't have that here. That is an explicit finding. We don't have that here. And then he goes on to say, you know, and not only that, but the defendant's claim that he was fearful, that he was coerced into all of this. He's like, you know, the tapes, the videotapes, there's no fear. There is bravado. There is eagerness. The defendant was jumping at the chance to do a daytime armed robbery of a stash house that could not be cased ahead of time to steal between 22 and 39 kilos of cocaine from a Mexican drug cartel, right? I mean, this was a dangerous, serious, violent crime that was being planned. And this defendant, the key piece of evidence, and this goes to the claim of entrapment as a matter of law as well. The jury saw the videotape of the May 14th, 2008 meeting, which was the first time that this defendant, Jackson, met with the undercover agent, Agent Zayas, who was portraying the disgruntled drug courier. And the jury saw Agent Zayas describe the scenario to Mr. Jackson. They saw there was no inducement. There was no trying to talk him into it. There was, here's the deal. This is the scenario. I'm offering you an opportunity to commit this crime. And they saw Mr. Jackson jump at that opportunity. He said he'd bring two guns. He committed, he was staring at Officer Zayas, or Agent Zayas, and he was staring at him because Zayas was going to be there at this stash house robbery. And Jackson said, I want to make sure I recognize you because when this goes down, I might get a little crazy and I don't want to hurt you. So this defendant, and this is a case, and also in terms of the other claim that the defendant made in his brief about entrapment as a matter of law, it's important to emphasize the procedural posture here and the standard of review. This was a case where the district court did instruct the jury on entrapment at Mr. Jackson's house, and they did instruct the jury on what they could take into consideration in deciding predisposition and inducement. And the jury here rejected that affirmative defense. I mean, they found either that there was no inducement or there was predisposition or both. Right. Counsel, if I could interject a question for you. I'm just as one judge. It doesn't seem to me that a substantive defense of entrapment on the crime or appeal of that goes anywhere because of predisposition. But it also seems like these circumstances are atypical and that the normal ways we look at quantity on sentences may not really apply where the government has total control of it. And that the district court didn't have the benefit of that Briggs case to help them think about it, nor was it as I read the transcript that it seemed like you'd really focused on that. So why would the government does the government object to a remand to reassess sentence in light of Briggs? We would object to that. And I think there's just two points that I'd want to make on that. One is anytime there's a reverse sting, right. Anytime, whether it's this stash house scenario or any kind of reverse sting that the government is involved in.  I mean, the government is always going to, in a situation like this, is going to be picking the number of the quantity of drugs. And I guess you could say the government could almost always pick a lower number, right. I mean, unless we get down to one joint. I mean, there's always whatever number we pick, the argument can always be made, well, why did you pick a number so high? You could have picked something lower. I think that, and the district court actually talked about, specifically about this number, you know, about the 22 to 39 kilos in the context of the defendant's argument that this was, you know, outrageous government conduct in picking such a high number. And he said, you know, that cuts both ways because on the one hand, it's a big number. On the other hand, that really emphasizes the danger of this. And the government had made this point too. I mean, this is a Mexican, theoretically. You know, this is this fictional Mexican drug cartel with somewhere between 22 to 39 kilos of cocaine. You know, they're not just going to say, well, c'est la vie, there goes our cocaine, right. I mean, there is a significant and serious risk of retribution. This is, you know, you want to pick a number that is high enough to emphasize the danger of what is being proposed. And also something that, you know, maybe if it's more than that, the defendant says, you know, realizes the danger and says, I'm not interested. If it's less than that, maybe he says it's not worth the risk. So, you know, the government in these scenarios picks a number. And I think the real question is, is there anything in this record that suggests in any way that this defendant was uncomfortable with this number? And there's just simply nothing. Well, I think the other question is, accepting what you all, what you've just said in context, is whether the district court made the right and adequate findings on that. Because all we have is we don't have that here. And that's a little bit different from saying, I find that the defendant did have the predisposition to engage in this activity involving X amount of drugs. I mean, it's certainly not a specific finding. It's just sort of a general observation. I mean, if we, with Briggs, it looks like more like a hard glance than a hard look. Well, except, but once again, I mean, even Briggs, even the panel in Briggs in this section, which is arguably dicta because they didn't end up relying on it, or they didn't end up having to reach it, but even there, they dropped this footnote saying the burden is on the defendant to show this. And even on appeal, the defendant is not bringing forward anything that would begin to satisfy that burden. And I think that a remand would just be an unnecessary exercise. Anything further? I have one related question. Are there any cases, published cases, of other circuits or district court published cases, anywhere in the country that you're aware of, that address how a court should look at the quantity amount for purpose of sentencing in a sting-type operation like this? You see, I don't know how we would address it if we had to address it. Both neither you nor the appellant's counsel have even given us a name for it, for this potential inchoate doctrine, which obviously isn't sentencing entrapment. It's something else. So I want to know what's the lay of the land. Are there cases out there? And as far as I know, there are not. I don't, I'm not aware of any cases. I mean, I think that the other circuits that have adopted the principle of sentencing entrapment or sentencing manipulation have done so in the same sorts of cases that this circuit has, which is, you know, where there's evidence that the defendant was predisposed to deal with a lower amount, but not this amount. But in this sort of situation where the government just has a reverse sting, picks a number, the defendant goes along with that number with no hesitation whatsoever, I don't think any other court has suggested that there is an issue that needs to be named, other than this panel in Briggs, which, as I say, even then, said that the burden is on the defendant. Okay. Thank you. That's very interesting. Thanks. I've also not found any such cases, Your Honor, although I have looked. And I struggled to try to come up with some sort of a rule that I could present to the court that would help them resolve these kinds of cases, and I couldn't come up with one. Obviously, we're in the area of discretion in the district court, a judge on sentencing matters, which is considerable. But the court does need to look, take a hard look, I believe. The district court needs to take a hard look at the culpability and the means of the defendant. And I don't think that was done in this case. The record doesn't. Counsel, in the footnote in Briggs that suggests that the burden is on you, what evidence have you either got in the record, or are you conceding that you don't have evidence in the record of your client's lack of predisposition and ambition and so forth, and are you asking for an opportunity to try and bring that in the district court? So where do we stand with respect to the footnote in Briggs? It is the defendant's burden, and obviously there's predisposition or evidence of predisposition, because that's why we're here on the imperfect defense or whatever we're going to call it, that Mr. Jackson did jump at this opportunity. So what we want the district court to take a closer look at is, again, Mr. Jackson's criminal history, which was relatively minimal, and also how he came into this conspiracy and those sorts of things. But if all you have is a criminal history, that's already been before the district court. He had that evidence. You just want him to consider it in light of Briggs. I'm not sure what impact that has and whether that satisfies that footnote in Briggs. We do want the court to take a better look at it in light of Briggs. The district court has considerable discretion, but it must exercise that discretion, and it must exercise that discretion applying the proper law. And that wasn't done here. I guess put another way, maybe more bluntly, is a remand just an idle act here? I mean, I don't see anything here that would indicate to me the judge is going to change his mind. Well, I disagree with that, Your Honor. I think that the district court judge felt that his hands were tied, and that's why we want another chance to present this to the court. Okay. Let's see how I'm out of time, unless the court has any other questions. Well, stay up. You've got Reed coming up, right? Oh, no, you don't. I'm sorry. You've got Reed there. All right. Thank you both for your arguments. See, if you want to untie the judge's hands, you better figure out a coined phrase for this kind of defense. Thank you, Your Honor. We'll come up with something before then if you give us the chance. I promise.
judges: Thomas, Gould, Bybee